### In the Matter of Lawrence Lee COOGAN, Debtor.

### Bankruptcy No. 1–81–0236.

United States Bankruptcy Court, S.D. Ohio, W.D.

Jan. 4, 1984.

---

Samuel D. Blesi, Cincinnati, Ohio, for debtor.

Michael Wirthlin, Cincinnati, Ohio, for creditor.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy Judge.

This matter came on for hearing on October 13, 1983, pursuant to an objection filed to the Court's order reopening this Chapter 7 case for the purpose of adding to the schedules a debt previously omitted.

Although all pleadings in this case are captioned in terms of reopening the case, the true dispute is whether the previously omitted debt in question is or is not dischargeable. Dischargeability of the debt was argued in the pleadings and was the subject of the hearing, with documentary evidence and testimony offered by each party. Thus, for purposes of judicial economy and efficiency, we shall decide both the reopening and the dischargeability issues at this time. (*See, In re Rediker,* 25 B.R. 71, 73 (Bkrtcy.M.D.Tenn.1982).

Accordingly, the Court hereby presents its Findings of Fact, Opinion and Conclusions of Law.

### Findings of Fact

1. Debtor/movant Lawrence Lee Coogan ("Lawrence") and opposing party Eileen Coogan ("Eileen") were divorced in 1972. No evidence regarding the circumstances or duration of their marriage was submitted to the Court, save that the marriage produced two sons, Joseph and Gary, who were teenagers at the time of the divorce.

2. In 1978, Eileen was living at 2572 Eight Mile Road, Cincinnati, Ohio, with sons Joseph and Gary. Late that summer Lawrence and Eileen agreed that Eileen would sell the property to Lawrence and that Lawrence would live at that address with the two boys while Eileen moved into a mobile home she was purchasing.

3. Eileen loaned money to Lawrence in September of 1978, at or around the time of closing on the Eight Mile Road property. The parties are in disagreement as to the number of loans made, the amount involved and the purposes for which the loans were made. Eileen testified to making four loans: the first to purchase carpeting for the house; the second to pay the insurance premium on the house; the third for closing costs; and the fourth a personal loan for $500. She did not state the total amount loaned, nor were any written instruments evidencing the loans proffered. Lawrence testified that only $500 changed hands and that money was used to pay closing costs. He stated that money for the carpeting came from an insurance settlement as the result of a fire and that Eileen did not pay the insurance premium. He further testified that he borrowed the $500 in closing costs because he had exhausted his funds paying for various appraisals and inspections that were necessary. The evidence lends credibility to Lawrence's version of the story. (*See,* Petitioner's Exhibit 1, the purchase and sale agreement on the property in which the contract is made contingent upon, in part, the seller paying the buyer's "closing costs not to exceed $512.–")

4. The parties stipulated that the debt had nothing to do with alimony, maintenance or support, and there were no allegations that Lawrence had obtained the money from Eileen by false pretenses, false representations or fraud.

5. Eileen demanded repayment in early 1979, approximately six months after the closing. Lawrence testified that he refused to pay at that time believing that repayment had been included in the $25,000 Ei-

leen realized from the sale of the house. Lawrence testified that she never again asked for repayment of the loan, but, conceded that several subsequent discussions took place between them regarding money, particularly disputed child support obligations.

6. Lawrence filed a Chapter 13 petition August 25, 1981, and an application to convert to Chapter 7 on November 4, 1981. The case was converted, and he received his discharge on February 12, 1982. The trustee filed a report of no assets on November 22, 1981 and the case was closed on August 24, 1982.

7. At approximately the same time of the filing, the Coogans were involved in a dispute over their son Joseph. Joseph left to live with Eileen in October of 1981. Both parties were apparently represented by counsel during this time, and again in late 1982 for a child support hearing.

8. Both parties agree that Lawrence called Eileen and notified her that he had filed his bankruptcy petition, but neither recalls the date that call was made. Eileen asked Lawrence during that call whether he intended to list on his schedules the money he owed her. Lawrence contends that he believed the "money owed" referred to their continuing dispute over child support. Eileen contends it meant the loan. In any event, Lawrence told her he did not know whether he would list the obligation.

On August 14, 1983, Lawrence was served with a complaint filed against him in Hamilton County Municipal Court by Eileen for payment of money allegedly due and owing. A copy of that complaint was not introduced, so we do not know the amount or basis of the claim against Lawrence other than representations made by the parties that it involved the money loaned by Eileen to Lawrence. On August 25, 1983, Lawrence moved to reopen his case so as to

allow him to amend his schedules to include the debt, and this hearing followed.

## Opinion

█ Under 11 U.S.C. § 350(b), "[a] case may be reopened in the Court in which such case was closed to administer assets, to accord relief to the debtor or for other cause." 11 U.S.C. 350(b). The decision to reopen a case is with the sound discretion of the Court. *In re Lorenzen,* 21 B.R. 129, 130 (Bkrtcy.N.D.Ohio 1982).

As was true in the case of *In re Johnson,* 36 B.R. 624 (Bkrtcy.S.D.Ohio 1983) (Perlman, J.), our purpose in signing the original order to reopen the case was to accord relief to the debtor, and the true dispute here is whether the relief sought, i.e., discharge of the debt, is available to the debtor in these circumstances.

The Bankruptcy Code provides that an individual may not be discharged from any debt not listed or scheduled in time to permit timely filing of a proof of claim, "*unless such creditor had notice or actual knowledge of the case in time for filing.*" 11 U.S.C. § 523(a)(3)(A). (emphasis supplied).

In this case it is uncontested that the creditor had actual knowledge of the case. Lawrence called Eileen and told her he had filed his bankruptcy petition. She asked whether he would list the debt, and he replied that he did not know.[1] While neither party can remember the date of the conversation, it stands to reason that it must have been prior to the closing of the case or discussions regarding the possible scheduling of the debt would have been meaningless.

█ Thus, based on the facts of this case and the strong circumstantial evidence that Eileen was represented by counsel in the Fall of 1981 for purposes of the custody fight, we find the debt to be dischargeable under Section 523(a)(3)(A). We can only

---

1. The parties dispute whether the debt discussed at that time was for child support or the loan. Lawrence testified that ultimately he did not schedule the debt because he believed it to be for child support, which he knew was nondischargeable; he further stated that had he

been aware that he owed Eileen money on the loan he would have listed that debt, having nothing to lose and everything to gain by doing so. Eileen vehemently denied this version of the story, but conceded, nonetheless, that she was aware of the bankruptcy filing.

repeat the admonition set forth in *In re Torres,* 15 B.R. 794 (Bkrtcy.E.D.N.Y.1981):

> Based on the knowledge that debtors had filed a petition in bankruptcy, a prudent creditor would be put on notice to make inquiries, notwithstanding the absence of formal notice. Petitioner, without good cause shown, chose to do nothing. Where petitioner had actual knowledge and failed to act, petitioner cannot now be heard to object to the lack of formal knowledge.

*Id.* at 797.

### Conclusions of Law

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1471(a) and the December 23, 1982 Order of the United States District Court for the Southern District of Ohio re: Operation of the Bankruptcy Court System.

2. The reopening of a case is within the sound discretion of the Court. In order to accord relief to the debtor, this case is reopened pursuant to 11 U.S.C. § 350(b).

3. Debtor is hereby allowed to amend his schedules to list the debt due and owing Eileen Coogan, which debt is the subject of Civil suit No. 83CV24472, pending in Hamilton County Municipal Court.

4. Debtor has met his burden of establishing that the creditor had actual and timely notice of the filing of the bankruptcy petition and failed to act on such notice. The debt to be listed in accordance with No. 3 above is therefore dischargeable pursuant to § 523(a)(3)(A).

IT IS SO ORDERED.